FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
NOV 17 2026
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DR. STEPHANIE J. SMITH,
Plaintiff,

v.

MCMICKLE, KUREY & BRANCH, LLP;
CASEY D. BAKER, Individually;
SCOTT MCMICKLE, Individually;
STATE OF GEORGIA,
Defendants.

1:26-CV-7000

Civil Action No.: ___________________

**ONE-HUNDRED-MILLION-DOLLAR COMPLAINT FOR REAL ESTATE DEED FRAUD, FRAUDULENT CONCEALMENT, CIVIL RICO, RICO CONSPIRACY, DECLARATORY AND EQUITABLE RELIEF, DAMAGES, DEMAND FOR DEED DELIVERY AND RELEASE OF LIEN, AND DEMAND FOR SETTLEMENT CONFERENCE**

STATEMENT OF CONSTITUTIONAL EMERGENCY

1. Plaintiff Dr. Stephanie J. Smith brings this affirmative federal civil action to challenge an alleged coordinated scheme involving disputed mortgage instruments, concealment of material financial and ownership information, acceleration of an alleged debt, and threatened foreclosure against her primary residence located at 5535 Hugh Howell Road, Stone Mountain, Georgia 30087.

2. Plaintiff alleges that Defendants have asserted authority to collect and enforce an alleged mortgage obligation without producing the underlying documentation requested by Plaintiff establishing the existence and funding of the loan, the identity of the lawful creditor, the current

ownership of the obligation, the authority of the foreclosure law firm, or the validity and delivery of the security deed.

3. Plaintiff specifically challenges the October 29, 2026, acceleration and collection demand for $707,858.69 issued by McMickle, Kurey & Branch, LLP through attorney Casey D. Baker.

4. Plaintiff alleges that the use of disputed financial instruments and unsubstantiated enforcement representations to threaten the loss of her primary residence forms part of the fraudulent concealment and racketeering scheme alleged herein.

5. Plaintiff brings this action affirmatively, before the threatened foreclosure results in the transfer or loss of her property, and seeks determination of Defendants' claimed authority, preservation of the property, damages, deed delivery, release of lien, and a settlement conference.

I. PARTIES

6. Plaintiff Dr. Stephanie J. Smith is the owner of the subject property and brings this action in her individual capacity.

7. Defendant Pinnacle Bank is identified in the October 29, 2026 collection correspondence as the creditor and successor by merger to Synovus Bank.

8. Defendant Synovus Bank participated in mortgage servicing, issued correspondence concerning the alleged obligation, and transmitted the October 1, 2026 Notice of Breach and Right to Cure.

9. Defendant McMickle, Kurey & Branch, LLP is the foreclosure and debt collection law firm that issued the October 29, 2026 acceleration and collection demand.

10. Defendant Casey D. Baker is an attorney associated with McMickle, Kurey & Branch, LLP and identified in the foreclosure correspondence. Plaintiff names Baker individually for the alleged conduct personally undertaken, authorized, or directed in connection with the disputed collection and foreclosure activity.

11. Defendant Scott McMickle is identified as a founding partner of McMickle, Kurey & Branch, LLP. Plaintiff seeks determination of his personal participation, direction, authorization, or agreement, if any, in the alleged conduct.

12. Defendant State of Georgia is named concerning Plaintiff's allegations that the state's property-transfer requirements, deed-recording processes, and foreclosure-related governmental actions contributed to the alleged deprivation of Plaintiff's property interests. Plaintiff alleges that state involvement in the challenged conduct must be examined separately from the private Defendants' actions.

II. FEDERAL JURISDICTION AND VENUE

13. Plaintiff invokes federal-question jurisdiction under 28 U.S.C. § 1331 based upon claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

14. Plaintiff invokes 18 U.S.C. § 1964(c) for damages arising from alleged violations of 18 U.S.C. § 1962.

15. Plaintiff invokes supplemental jurisdiction under 28 U.S.C. § 1367 for the related claims of real estate deed fraud, fraudulent concealment, and equitable relief arising from the same transactions and occurrences.

16. Plaintiff alleges that venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because substantial events giving rise to the claims occurred within this district and the subject property is located within the district.

17. Plaintiff invokes 28 U.S.C. §§ 2201 and 2202 for declaratory and further relief concerning the disputed obligation, security deed, lien, and enforcement authority.

18. Plaintiff alleges that the threatened deprivation of her primary residence presents substantial property-rights concerns under the Due Process Clause of the Fourteenth Amendment, to the extent the challenged conduct is attributable to state action.

## III. PROPERTY AND DISPUTED MORTGAGE TRANSACTION

19. The subject property is Plaintiff's primary residence located at 5535 Hugh Howell Road, Stone Mountain, Georgia 30087.

20. The mortgage account identified in the correspondence is 1501022568.

21. Plaintiff disputes the alleged mortgage transaction, including the claimed origination, funding, consideration, execution, delivery, acceptance, recording, assignment, and enforcement of the associated financial instruments.

22. Plaintiff challenges whether the alleged loan was funded by the entity claiming creditor status and demands identification of the source of the funds, the recipient of the funds, and the accounting entries documenting the transaction.

23. Plaintiff challenges the legal sufficiency of the security deed and whether it was lawfully delivered, accepted, recorded, and subsequently transferred.

24. Plaintiff alleges that the original promissory note, security deed, assignments, endorsements, allonges, and complete transaction records are material to determining the existence, ownership, and enforceability of the alleged obligation.

25. Plaintiff disputes whether the party claiming enforcement possesses the legal right to collect the alleged debt or exercise the power of sale against the property.

## IV. CHRONOLOGY OF DEFENDANTS' MISCONDUCT

26. On June 4, 2025, Synovus confirmed cancellation of Plaintiff's automatic mortgage payment drafts.

27. On July 13, 2026, Synovus issued correspondence concerning alleged delinquency and mortgage assistance.

28. On August 23, 2026, Plaintiff issued written correspondence challenging the claimed obligation and demanding documentation supporting the alleged loan and the parties' enforcement authority.

29. Plaintiff's correspondence included eleven document-production demands concerning the original promissory note, endorsements, assignments, transfers, securitization, accounting, and claimed creditor authority.

30. Plaintiff's correspondence challenged the financial transaction and requested evidence establishing the existence of the alleged obligation and the authority of the party seeking collection.

31. On October 1, 2026, Synovus issued a Notice of Breach and Right to Cure demanding $28,616.15 by October 15, 2026.

32. The October 1 correspondence warned that the alleged obligation could be accelerated, and foreclosure proceedings initiated if the demanded amount was not paid.

33. Plaintiff identifies October 1, 2026 Notice of Breach and Right to Cure as Exhibit A, incorporated by reference into this Complaint.

34. Exhibit A establishes the amount demanded, the stated cure deadline, and the warning of acceleration and foreclosure preceding the subsequent collection demand WITHOUT VERIFYING AGENCY.

35. On October 29, 2026, McMickle, Kurey & Branch, LLP issued correspondence accelerating the entire alleged mortgage obligation and demanding $707,858.69, without responding to the plaintiff's "Offer To Pay Letter"

36. The law firm further asserted that interest was accruing at $62.1683 per day, with additional charges and attorney fees potentially increasing the amount demanded.

37. The law firm identified Pinnacle Bank as the creditor and represented that Pinnacle Bank was successor by merger to Synovus Bank.

38. The law firm identified itself as a debt collector and asserted authority to pursue collection and enforcement of the alleged obligation without providing verification of agency.

39. The October 29 correspondence did not include the original executed promissory note, complete loan-funding documentation, full assignment history, verified accounting, or written documentation establishing the law firm's agency authority.

40. Plaintiff alleges that the demand for $707,858.69 was made while material questions concerning the existence, ownership, funding, and enforceability of the alleged obligation remained unresolved.

## V. REAL ESTATE DEED FRAUD AND FRAUDULENT CONCEALMENT

41. Plaintiff incorporates the preceding allegations.

42. Plaintiff alleges that the security deed and related instruments are disputed and that material facts concerning their execution, delivery, acceptance, recording, assignment, and enforcement have not been adequately disclosed.

43. Plaintiff challenges whether the security deed was supported by a lawful underlying obligation and whether the party seeking enforcement possesses the legal rights represented in the foreclosure correspondence.

44. Plaintiff alleges that Defendants have relied upon the disputed security deed to assert financial claims against her property while failing to produce the complete documentation requested to establish their claimed interests.

45. Plaintiff alleges that material information concerning the loan's funding, the identities of the parties involved, the handling of the promissory note, and the transfer of the security interest has been withheld or remains undisclosed.

46. Plaintiff further alleges that the claimed creditor succession, mortgage servicing arrangements, and law firm's enforcement authority are material to the legitimacy of the threatened foreclosure.

47. Plaintiff alleges that any knowing concealment of material information, false representation of ownership, or fraudulent use of recorded instruments to obtain her property constitutes actionable misconduct.

48. Plaintiff demands determination of the validity of the security deed, the underlying obligation, and the claimed lien.

VI. GEORGIA PROPERTY-TRANSFER STATUTES, DEED DELIVERY, AND ACCEPTANCE

49. Plaintiff incorporates the preceding allegations.

50. O.C.G.A. § 44-5-30 establishes statutory requisites for deeds conveying land in Georgia, including execution, attestation, and delivery to the purchaser or the purchaser's representative.

51. Plaintiff alleges that lawful deed delivery is a substantive requirement affecting whether a deed accomplishes the intended conveyance of an interest in real property.

52. Plaintiff challenges whether the disputed security deed was executed, delivered, accepted, and recorded in compliance with the governing statutory requirements.

53. Plaintiff further invokes O.C.G.A. § 44-14-61 concerning execution and attestation requirements applicable to security deeds.

54. Plaintiff alleges that the existence of a recorded security instrument does not eliminate the necessity of determining whether the instrument was lawfully executed and delivered.

55. Plaintiff alleges that Defendants relied upon the disputed security deed to assert a security interest and threaten foreclosure without producing the documents Plaintiff requested to establish the transaction's validity.

56. Plaintiff demands identification of the original grantor, grantee, execution date, delivery circumstances, acceptance, recording information, and subsequent transfers of the security deed.

57. Plaintiff demands identification of the individual or entity that received the security deed and the circumstances under which delivery and acceptance allegedly occurred.

58. Plaintiff alleges that a security deed that was never legally delivered cannot be relied upon as a valid conveyance merely because a party later asserts enforcement rights.

59. Plaintiff demands judicial determination of whether the disputed security deed satisfied the statutory requisites necessary to convey the claimed security interest.

60. Plaintiff alleges that the failure to satisfy mandatory deed-delivery requirements, when coupled with knowing misrepresentations concerning the existence or enforceability of the deed, supports her allegations of real estate deed fraud and fraudulent concealment.

## VII. ALLEGED STATE PARTICIPATION AND CONSTITUTIONAL PROPERTY RIGHTS

61. Plaintiff incorporates the preceding allegations.

62. Plaintiff alleges that the State of Georgia established statutory requirements governing the execution, delivery, recording, and enforcement of instruments affecting real property.

63. Plaintiff alleges that governmental recording and enforcement processes must operate consistently with the legal requirements governing the instruments upon which property rights are asserted.

64. Plaintiff challenges any governmental action that knowingly treats an invalid or undelivered security deed as legally sufficient to deprive her of property.

65. Plaintiff alleges that state officials or governmental participants who knowingly facilitate fraudulent use of property instruments may be responsible for their own actionable conduct.

66. Plaintiff further challenges any state administrative or adjudicative proceeding that deprives her of protected property interests without the process required by the United States Constitution.

67. Plaintiff alleges that the participation of state-paid judicial officers in proceedings involving state interests raises questions requiring examination where specific facts establish a disqualifying financial interest, actual bias, or unconstitutional procedure.

68. Plaintiff demands identification of any state official, agency, recording officer, or adjudicative participant who knowingly authorized, facilitated, or participated in the particular misconduct alleged herein.

69. Plaintiff alleges that the conduct of any state participant must be evaluated according to the actions actually undertaken, the authority exercised, and the resulting effect upon Plaintiff's property rights.

70. Plaintiff demands declaratory relief concerning any established unconstitutional governmental conduct connected to the disputed deed and threatened deprivation of her property.

VIII. UNVERIFIED AGENCY AND ACCELERATION OF THE ENTIRE ALLEGED LOAN

71. Plaintiff incorporates the preceding allegations.

72. On October 29, 2026, McMickle, Kurey & Branch, LLP, through attorney Casey D. Baker, demanded $707,858.69 from Plaintiff and declared the entire alleged mortgage obligation immediately due.

73. The law firm asserted collection and enforcement authority on behalf of the claimed creditor without providing documentation in the reviewed correspondence establishing its agency relationship or authorization to enforce the obligation.

74. The correspondence did not include the original executed promissory note, evidence establishing the alleged loan's origination and funding, or a complete accounting supporting the amount demanded.

75. The law firm threatened foreclosure against Dr. Smith's primary residence and accelerated the entire alleged loan balance to $707,858.69 without producing documentation establishing the existence and funding of the alleged loan, the identity and authority of the lawful creditor, the

law firm's agency and authorization to collect or foreclose, the chain of assignments, the validity and delivery of the security deed, or a verified accounting supporting the amount demanded, despite Dr. Smith's prior written demands for documentation.

76. Plaintiff alleges that the acceleration and collection demand furthered the fraudulent concealment and property-deprivation scheme alleged in this Complaint.

77. Plaintiff challenges whether Defendants knowingly relied upon materially false or misleading representations concerning the obligation, creditor identity, agency authority, or enforceability of the security deed.

78. Plaintiff alleges that the threatened foreclosure creates an immediate risk of economic injury and loss of her primary residence.

IX. FEDERAL CIVIL RICO — 18 U.S.C. §§ 1962(c) AND 1964(c)

79. Plaintiff incorporates all preceding allegations concerning real estate deed fraud, fraudulent concealment, disputed loan origination and funding, defective security instruments, unverified enforcement authority, acceleration of the alleged mortgage obligation, and threatened foreclosure against Plaintiff's primary residence.

80. Plaintiff alleges that Pinnacle Bank, Synovus Bank, McMickle, Kurey & Branch, LLP, Casey D. Baker, and any additional participants established through evidence engaged in coordinated mortgage collection and foreclosure activities through their respective banking, servicing, legal, and enforcement operations.

81. Plaintiff alleges that the challenged conduct involved the use of mortgage instruments, creditor representations, collection correspondence, and threatened foreclosure to obtain payment of an alleged obligation or acquire an interest in Plaintiff's real property.

A. THE ALLEGED RICO ENTERPRISE

82. Plaintiff identifies the alleged enterprise as the coordinated banking, mortgage servicing, debt collection, and foreclosure operations through which the disputed obligation was administered, accelerated, and pursued for collection.

83. Plaintiff alleges that the enterprise operated through relationships among the banking entities, their personnel, the foreclosure law firm, and the attorney responsible for the challenged collection correspondence.

84. The alleged enterprise's common purpose was to collect and enforce the claimed mortgage obligation, including through acceleration and threatened foreclosure. Plaintiff alleges that this activity became fraudulent to the extent participants knowingly asserted false ownership, agency, debt, or enforcement representations.

85. Plaintiff alleges that the banking and legal participants performed distinct functions within the alleged enterprise, including maintaining mortgage records, asserting creditor rights, calculating amounts demanded, preparing collection correspondence, and threatening enforcement against the property.

86. Plaintiff alleges that these coordinated activities affected interstate commerce through banking operations, financial communications, debt collection, and the handling of mortgage instruments.

B. PINNACLE BANK'S ALLEGED PARTICIPATION

87. Defendant Pinnacle Bank was identified in the October 29, 2026 correspondence as the creditor and successor by merger to Synovus Bank.

88. Plaintiff challenges Pinnacle Bank's claimed ownership and enforcement authority and demands identification of the original creditor, original loan funding, subsequent transfers, and the legal basis for its asserted creditor position.

89. Plaintiff alleges that Pinnacle Bank's claimed creditor status was used to support the acceleration and collection demand for $707,858.69.

90. Plaintiff alleges that the October 29 correspondence did not provide the merger documentation, complete loan ownership history, original note, or security deed assignments establishing the claimed enforcement position.

91. Plaintiff alleges that any knowing authorization of materially false creditor representations or collection demands would constitute participation in the fraudulent conduct challenged herein.

C. SYNOVUS BANK'S ALLEGED PARTICIPATION

92. Defendant Synovus Bank participated in administering the alleged mortgage obligation and communicating with Plaintiff concerning payments, delinquency, default, and potential foreclosure.

93. On June 4, 2025, Synovus confirmed cancellation of Plaintiff's automatic mortgage payment drafts.

94. On July 13, 2026, Synovus issued correspondence concerning alleged delinquency and mortgage assistance.

95. On August 23, 2026, Plaintiff issued correspondence challenging the alleged obligation and demanding eleven categories of documents concerning the transaction and enforcement authority.

96. On October 1, 2026, Synovus issued the Notice of Breach and Right to Cure attached as Exhibit A, demanding $28,616.15 by October 15, 2026.

97. Exhibit A warned that the alleged obligation could be accelerated and foreclosure proceedings initiated if the alleged default was not cured.

98. Plaintiff alleges that Synovus's servicing records, accounting information, creditor identification, and foreclosure referral activities were material to the subsequent acceleration of the entire alleged obligation.

99. Plaintiff challenges whether Synovus knowingly transmitted or relied upon materially inaccurate information concerning the alleged debt, its ownership, or the authority to enforce the security deed.

D. MCMICKLE, KUREY & BRANCH, LLP'S ALLEGED PARTICIPATION

100. Defendant McMickle, Kurey & Branch, LLP issued the October 29, 2026 collection and acceleration correspondence concerning Plaintiff's primary residence.

101. The law firm demanded payment of $707,858.69 and asserted that interest continued accruing at $62.1683 per day, together with additional charges and fees.

102. The law firm identified itself as a debt collector and asserted authority to pursue collection of the alleged obligation.

103. Plaintiff alleges that the law firm threatened enforcement of the security interest without including documentation establishing the existence and funding of the alleged loan, the current holder's enforcement rights, the complete chain of assignments, or the calculation supporting the accelerated balance.

104. Plaintiff further alleges that the law firm did not provide documentation establishing its agency relationship, the identity of the person authorizing foreclosure, or the scope of its authority to act on behalf of the claimed creditor.

105. Plaintiff challenges whether the law firm possessed information contradicting the representations made in its collection correspondence and whether any material information was knowingly concealed.

106. Plaintiff alleges that the October 29 collection demand was a significant act in the alleged scheme because it sought immediate payment of the entire claimed balance while threatening enforcement against Plaintiff's primary residence.

E. CASEY D. BAKER'S ALLEGED PARTICIPATION

107. Defendant Casey D. Baker was identified as an attorney associated with the foreclosure and collection correspondence issued by McMickle, Kurey & Branch, LLP.

108. Plaintiff challenges Baker's individual participation in preparing, authorizing, transmitting, or directing the October 29 collection and acceleration demand.

109. Plaintiff alleges that the attorney's representations concerning creditor identity, the amount allegedly owed, and the threatened enforcement of the security deed were material to the collection activity.

110. Plaintiff demands identification of the documents Baker reviewed, the persons who authorized the collection activity, and the information relied upon in asserting the creditor's enforcement rights.

111. Plaintiff alleges that any knowing participation by Baker in materially false representations or fraudulent concealment undertaken to obtain Plaintiff's money or property would constitute individual participation in the alleged scheme.

F. SCOTT MCMICKLE'S ALLEGED PARTICIPATION

112. Defendant Scott McMickle is identified as a founding partner of McMickle, Kurey & Branch, LLP.

113. Plaintiff alleges that the firm's foreclosure operations, attorney supervision, authorization procedures, and collection practices are material to determining whether Scott McMickle personally participated in the alleged scheme.

114. Plaintiff demands identification of McMickle's role, if any, in authorizing the firm's representation of the claimed creditor and the collection and foreclosure activity directed toward Plaintiff.

115. Plaintiff demands production of communications, instructions, approvals, and internal records establishing whether McMickle directed, approved, knowingly facilitated, or agreed to participate in the challenged conduct.

116. Plaintiff alleges that any proven knowing participation by McMickle in fraudulent representations, concealment, or racketeering activity constitutes conduct for which individual liability is sought.

G. THE OCTOBER 29, 2026 ACCELERATION DEMAND

117. Plaintiff identifies the October 29, 2026 collection correspondence as a central transaction in the alleged racketeering scheme.

118. The law firm declared the entire alleged mortgage obligation due and demanded $707,858.69.

119. The correspondence asserted additional daily interest and warned of enforcement against the property.

120. Plaintiff alleges that the law firm threatened foreclosure against Dr. Smith's primary residence and accelerated the entire alleged loan balance to $707,858.69 without producing documentation establishing the existence and funding of the alleged loan, the identity and authority of the lawful creditor, the law firm's agency and authorization to collect or foreclose, the chain of assignments, the validity and delivery of the security deed, or a verified accounting supporting the amount demanded, despite Dr. Smith's prior written demands for documentation.

121. Plaintiff alleges that the collection demand sought to compel payment or expose her property to foreclosure while the underlying transaction and enforcement authority remained disputed.

122. Plaintiff alleges that the representations in the acceleration letter must be examined against the original loan records, creditor succession documents, agency authorization, payment history, and security deed records to determine whether they were knowingly false or misleading.

H. ALLEGED MAIL FRAUD AND WIRE FRAUD

123. Plaintiff alleges that the challenged collection activities involved written correspondence transmitted through the United States mail, including the October 29, 2026 collection letter sent by certified mail.

124. Plaintiff alleges that the October 29 correspondence was used to communicate the accelerated balance, assert creditor authority, and demand payment under threat of enforcement against the property.

125. Plaintiff alleges that any knowingly false material representations concerning the existence of the obligation, creditor ownership, loan balance, or enforcement authority transmitted to obtain money or property would constitute conduct relevant to mail fraud under 18 U.S.C. § 1341.

126. Plaintiff further alleges that any interstate electronic communications knowingly used to advance the same fraudulent scheme would constitute conduct relevant to wire fraud under 18 U.S.C. § 1343.

127. Plaintiff alleges that the requested banking, servicing, and attorney communications will identify the participants responsible for originating, approving, and transmitting the challenged representations.

I. ALLEGED PATTERN OF RACKETEERING ACTIVITY

128. Plaintiff alleges that the October 1 default notice and October 29 acceleration demand were related steps in the collection and threatened foreclosure of the disputed obligation.

129. Plaintiff further alleges that the defendants' collection and foreclosure operations extend beyond Plaintiff's individual mortgage account and involve similar transactions affecting other homeowners.

130. Plaintiff alleges, upon information and belief, that the use of materially false creditor representations, concealed loan information, and unauthorized foreclosure demands is not limited to her property.

131. Plaintiff alleges that any repeated fraudulent communications undertaken through these operations, if established, form part of a related and continuing pattern of racketeering activity.

132. Plaintiff seeks identification of the relevant transactions, communications, participants, dates, and affected properties necessary to establish the alleged pattern and continuity of the conduct.

J. FRAUDULENT CONCEALMENT AND REAL ESTATE DEED FRAUD WITHIN THE ALLEGED SCHEME

133. Plaintiff alleges that the alleged scheme involved the use of a disputed security deed and related mortgage instruments to assert financial claims against her property.

134. Plaintiff challenges the original execution, delivery, acceptance, recording, assignment, and present enforceability of the security deed.

135. Plaintiff alleges that material facts concerning the funding of the original transaction, the identity of the creditor, the transfer of the promissory note, and the ownership of the security interest remain disputed.

136. Plaintiff alleges that any knowing concealment of these facts, coupled with materially false enforcement representations, would further the alleged scheme to obtain money or property through fraudulent means.

137. Plaintiff demands production of the original instruments, complete chain of title, loan funding records, and all documents establishing the lawful authority of the parties attempting enforcement.

K. RICO CONSPIRACY — 18 U.S.C. § 1962(d)

138. Plaintiff alleges that the banking, servicing, and foreclosure activities involved coordinated communications and decisions among the defendants.

139. Plaintiff alleges that the October 29 acceleration demand resulted from information and instructions supplied through those coordinated operations.

140. Plaintiff challenges whether the defendants knowingly agreed to advance materially false representations concerning the alleged debt, creditor identity, agency authority, or enforceability of the security deed.

141. Plaintiff alleges that any agreement to participate in the alleged racketeering activity constitutes conduct actionable under 18 U.S.C. § 1962(d).

L. INJURY TO PLAINTIFF'S PROPERTY INTERESTS

142. Plaintiff alleges that the challenged collection and acceleration activity placed her primary residence at risk of foreclosure and involuntary transfer.

143. Plaintiff alleges that the demanded $707,858.69, continuing interest, additional fees, and threatened foreclosure exposed her to substantial financial consequences.

144. Plaintiff seeks recovery for actual economic losses to her property or business directly caused by any proven racketeering violations, including any documented expenses, loss of property value, or other legally recoverable financial injury.

145. Plaintiff further requests appropriate equitable relief to protect the property while the disputed enforcement rights are adjudicated.

M. DEMAND FOR RELIEF UNDER FEDERAL CIVIL RICO

146. Plaintiff demands judgment against each defendant found liable for participation in the alleged racketeering activity.

147. Plaintiff demands compensatory damages for actual economic injuries directly caused by proven violations of 18 U.S.C. § 1962.

148. Plaintiff demands treble damages and recoverable litigation costs under 18 U.S.C. § 1964(c).

149. Plaintiff demands production and preservation of the records establishing loan origination, funding, creditor succession, agency authority, collection calculations, and foreclosure instructions.

150. Plaintiff demands identification of the individuals who authorized the acceleration of the alleged obligation and the threatened foreclosure.

151. Plaintiff demands a determination of the validity and enforceability of the disputed security deed and the claimed lien through the declaratory and equitable claims asserted in this action.

152. Plaintiff demands deed delivery and release of lien upon a determination of her legal entitlement to that relief.

153. Plaintiff demands a settlement conference with representatives possessing authority to resolve the claims, address the disputed mortgage instruments, release any unenforceable lien, and negotiate damages.

154. Plaintiff demands all additional relief available under applicable federal law and the related claims asserted in this Complaint.

X. DEMAND FOR DEED DELIVERY AND RELEASE OF LIEN

155. Plaintiff incorporates all preceding allegations concerning the disputed mortgage transaction, Georgia's statutory deed-delivery requirements, fraudulent concealment, alleged racketeering activity, and threatened foreclosure.

156. Plaintiff demands production of the original promissory note, security deed, assignments, endorsements, allonges, and related instruments.

157. Plaintiff demands identification of the entity that originated and funded the alleged loan.

158. Plaintiff demands identification of the lawful holder of the promissory note and security deed.

159. Plaintiff demands the complete chain of title and all assignments or transfers of the alleged obligation and security interest.

160. Plaintiff demands documentation establishing the agency authority of McMickle, Kurey & Branch, LLP and Casey D. Baker to pursue collection and foreclosure.

161. Plaintiff demands identification of any personal authorization, direction, or participation by Scott McMickle concerning the challenged enforcement activity.

162. Plaintiff demands a full and verified accounting of the alleged obligation, including principal, interest, fees, charges, payments, credits, transfers, and amounts claimed due.

163. Plaintiff demands identification of the original deed's execution, delivery, acceptance, and recording circumstances pursuant to O.C.G.A. §§ 44-5-30 and 44-14-61.

164. Plaintiff demands delivery of the deed and any other instruments to which she establishes lawful entitlement.

165. Plaintiff demands release and cancellation of the lien upon a determination that the secured obligation has been satisfied, discharged, or is otherwise unenforceable.

166. Plaintiff demands correction of property, title, servicing, and credit reporting records to reflect any judicial determination concerning the disputed obligation or security interest.

## XI. DEMAND FOR PRESERVATION OF PROPERTY AND EVIDENCE

167. Plaintiff demands preservation of the subject property pending resolution of the claims asserted herein.

168. Plaintiff requests appropriate injunctive relief preventing foreclosure or transfer of the property upon satisfaction of the applicable legal requirements.

169. Plaintiff demands preservation of all original financial instruments, recorded documents, assignments, servicing records, loan-funding records, and communications relating to the disputed transaction.

170. Plaintiff demands preservation of the documents establishing the claimed agency relationship between the banking entities and the foreclosure law firm.

171. Plaintiff demands preservation of all communications concerning the October 29, 2026 acceleration and the threatened foreclosure.

172. Plaintiff demands preservation of records concerning other mortgage transactions or foreclosure activities relevant to establishing the alleged enterprise, pattern of racketeering activity, and defendants' knowledge or intent.

173. Plaintiff demands preservation of all records concerning the preparation, approval, transmission, and enforcement of the October 1, 2026 Notice of Breach and Right to Cure, identified as Exhibit A.

174. Plaintiff demands preservation of communications and authorization records involving Casey D. Baker, Scott McMickle, the banking defendants, and all participating collection and foreclosure personnel.

175. Plaintiff demands preservation of any governmental records directly connected to the disputed deed, its recording, and any challenged state action affecting Plaintiff's property.

## XII. DECLARATORY AND EQUITABLE RELIEF

176. Plaintiff requests a declaration identifying the party legally entitled to enforce the alleged mortgage obligation.

177. Plaintiff requests a determination of the validity, enforceability, and priority of the security deed and claimed lien.

178. Plaintiff requests a determination of whether the disputed deed satisfied the applicable execution, delivery, acceptance, and recording requirements of Georgia law.

179. Plaintiff requests a determination of the authority of each defendant to participate in collection, acceleration, or foreclosure activity affecting the subject property.

180. Plaintiff requests appropriate equitable relief to prevent enforcement of an invalid or unenforceable instrument.

181. Plaintiff requests correction of public records and release of any lien determined to be invalid, satisfied, discharged, or unenforceable.

182. Plaintiff requests a declaration concerning any established unconstitutional governmental conduct connected to the disputed deed or deprivation of her property rights.

## XIII. DAMAGES AND RELIEF REQUESTED

183. Plaintiff demands compensatory damages for proven economic injuries resulting from Defendants' alleged unlawful conduct.

184. Plaintiff demands treble damages under 18 U.S.C. § 1964(c) for any injury to business or property caused by a proven violation of the federal RICO statute.

185. Plaintiff demands declaratory relief concerning the alleged obligation, security deed, creditor identity, enforcement authority, deed delivery, and lien.

186. Plaintiff demands appropriate injunctive and equitable relief protecting her primary residence.

187. Plaintiff demands deed delivery and release of lien upon proof of her entitlement to that relief.

188. Plaintiff demands correction of inaccurate property and financial records resulting from established unlawful conduct.

189. Plaintiff demands allowable costs, expenses, and attorney fees where authorized by law.

190. Plaintiff demands determination of the individual responsibility of each defendant for the actionable conduct established in this proceeding.

191. Plaintiff demands such additional relief as the Court determines to be just and lawful.

## XIV. DEMAND FOR SETTLEMENT CONFERENCE

192. Plaintiff demands a settlement conference involving representatives of Pinnacle Bank, Synovus Bank, McMickle, Kurey & Branch, LLP, Casey D. Baker, Scott McMickle, and any other parties properly participating in this action, with authority to negotiate resolution of the claims.

193. Plaintiff demands that settlement discussions address the alleged obligation, deed delivery, lien release, preservation of her primary residence, correction of records, damages, and resolution of the federal claims.

194. Plaintiff demands that the settlement conference address the October 1, 2026 Notice of Breach and Right to Cure, the October 29, 2026 acceleration demand for $707,858.69, the disputed creditor and agency authority, and the enforceability of the security deed.

195. Plaintiff requests that the Court schedule a settlement conference at the earliest appropriate opportunity.

## VERIFICATION

I, Dr. Stephanie J. Smith, declare under penalty of perjury under the laws of the United States of America that the factual allegations stated from my personal knowledge are true and correct, and that allegations identified as disputed or requiring determination are presented as such.

Executed on Nov 17, 2026.

Dr. Stephanie J. Smith
Plaintiff, Pro Se

Signature: [signature]

Address: 5535 Hugh Howell Road
Stone Mountain, Georgia 30087

## CERTIFICATE OF SERVICE

I certify that on 11/17, 2026, a true and correct copy of the foregoing document, including Exhibit A, was served upon the following parties by the methods indicated below.

Pinnacle Bank
Email: loanoperations@pnfp.com
Email: specializedloanteam@pnfp.com

Synovus Bank
800 Shades Creek Parkway, MS130
Birmingham, AL 35209
Email: support@synovus.com
Email: media@synovus.com
Email: investorrelations@synovus.com
Email: Liz.Wolverton@synovus.com
Email: Wayne.Akins@synovus.com
Email: kevin.blair@synovus.com

McMickle, Kurey & Branch, LLP
217 Roswell Street, Suite 200
Alpharetta, GA 30009
Email: foreclosures@mkblawfirm.com

Casey D. Baker, Attorney
McMickle, Kurey & Branch, LLP
217 Roswell Street, Suite 200
Alpharetta, GA 30009
Email: cbaker@mkblawfirm.com

Scott McMickle, Attorney
McMickle, Kurey & Branch, LLP
217 Roswell Street, Suite 200
Alpharetta, GA 30009
Email: foreclosures@mkblawfirm.com

State of Georgia
Office of the Attorney General
40 Capitol Square SW
Atlanta, Georgia 30334

Date: Nov 17, 2026

Dr. Stephanie J. Smith
Plaintiff, Pro Se

Signature: [signature]

EMAIL ADDRESSES

loanoperations@pnfp.com, specializedloanteam@pnfp.com, support@synovus.com, media@synovus.com, investorrelations@synovus.com, Liz.Wolverton@synovus.com, Wayne.Akins@synovus.com, kevin.blair@synovus.com, foreclosures@mkblawfirm.com, cbaker@mkblawfirm.com

EXHIBIT A

OCTOBER 1, 2026 NOTICE OF BREACH AND RIGHT TO CURE

Issued by: Synovus Bank
Recipient: Dr. Stephanie J. Smith
Mortgage Account: 1501022568
Property: 5535 Hugh Howell Road, Stone Mountain, Georgia 30087
Amount Demanded: $28,616.15
Cure Deadline: October 15, 2026

The original October 1, 2026 notice is designated Exhibit A and incorporated by reference into the Complaint. Its complete, unaltered pages are to follow this exhibit identification when the document is assembled.

END OF COMPLAINT